GIDEON OLIN, Esquire,

*against*

NATHANIEL CHIPMAN, Esquire,

(Reserved Case.)

ACTION on the case for a libel.

This was an action for writing and causing to be
published by the defendant, of and concerning the
plaintiff, in the *Green Mountain Patriot*, a paper
printed at *Peachum*, a libel " *of the meaning and pur-
port following, to wit*"—" *Electioneering Communi-
cation.*"  The paper was produced containing the
supposed libel, and proved by the depositions of
*Fairley* and *Goss*, &c.  By the same evidence it was
proved, that the word " *electioneering*," which in the
newspaper produced preceded the piece charged as a
libel, was not part of the writing published, but was
prefixed by the printers to notify to the reader the
subject matter of the piece.  This was objected by
defendant's counsel as a variance.  It was further
objected by said counsel, that there are further va-

riances between the writing offered in evidence and the declaration in this case: for that in the declaration it is " *the* national government" instead of " *our* national government," and " *try-coloured*" in the declaration in two words, instead of " *tricoloured.*"

On exception taken by defendant's counsel for these variances, it is ordered by the Court that the trial proceed, and the paper adduced be read in evidence to the Jury, and that the verdict given in this cause be taken subject to the opinion of the Court, whether the said variances, or either of them, are in point of law fatal against the plaintiff, or if the same or either of them are amendable.

By order of Court,
*Samuel Robinson,* 2d Clerk.

Verdict for plaintiff.

The reserved points were argued this term.

*Nathaniel Chipman,* Esquire. Here are two points to be decided in the reserved case:

First. Are the variances, or any of them, between the libel produced by the plaintiff in evidence, and his declaration, fatal? Are they, or any of them, of such importance as would by judgment of Court have precluded the libel in the newspaper from being read in evidence?

Secondly. If such variances, or any of them, are fatal, would the Court have permitted the plaintiff so to amend his declaration as would have suited the mode of declaring to the evidence?

Actions of this nature are *stricti juris*. Actions of tort, as relative to plaintiff and defendant, differ from other actions as respects both. Rules relative to such actions are ancient, and any person who brings such action is supposed to be conusant of them. The defendant is as well entitled to see that the plaintiff is kept within rules, as the plaintiff is entitled to his judgment if pursued within these rules, but neither of them are to be favoured.

That these variances are fatal, will appear from a candid view of the doctrine on this subject.

There are two modes of declaring for words :

First. *In the words.* Thus : The defendant did falsely speak, utter and publish, of and concerning the plaintiff, the following words, to wit, You, meaning the plaintiff, are a perjured villain ; in which mode the precise words are set forth.

Secondly. By the sense. That is, setting forth the substance of the words, thus : The defendant did falsely speak and publish of and concerning the plaintiff, that he the plaintiff was a perjured villain.

So there are two modes of declaring for a libel :

First. In the following words.

Secondly. According to the tenor following.

In the words. Thus : the defendant did utter and publish of and concerning the plaintiff, a false, defamatory and scandalous libel, in the following words, to wit, It is hoped that the freemen, &c. relating the words precisely.

*By the sense.* That is, setting forth the substance, that the defendant did falsely, and with intent to defame the plaintiff, write, utter and publish in writing, of and concerning the plaintiff, that he the plaintiff

did, on the 16th of *August*, with a number of other persons from *Bennington*, &c. go to *Pownal*, and assist in raising what they falsely called a liberty-pole, &c.

The plaintiff in the present case has not adopted either of these modes. " In the words of the meaning and purport following, to wit," is not common *English*, but it is conjectured by what has been said by the plaintiff's counsel, to intend the declaring *upon the sense*. In this mode of declaring, it ought to be, The defendant did, *among other things*, falsely, &c. write, utter, &c. because if the piece contains any thing that does not relate to the plaintiff, it will be impertinent to introduce it ; but to say, *ad effectum*, to the purport, says the case read is nought. *Salkeld's Reports*, vol. 2. p. 417. The reason is, the plaintiff is to give either the words themselves or the substance of the words. In the latter case, the plaintiff need not regard the precise mode in which the words are addressed. But for the plaintiff to say the words are of such an import or such a meaning, is to assume on himself the province of the Court, that of determining the construction of the words. He must not impose on the Court his own construction, but give the words either literally or in substance, and leave the construction to the Court. If the plaintiff had declared *in words* of *the meaning and purport following, to wit*, some constrained construction might be given that he had declared upon *the substance;* but his using the definite article " *the*," nails him to the precise words. " *In the words.*" Here he declares *in hæc verba*. What follows of the meaning and purport following only shews the construction he

puts upon the precise words, to which by his mode of declaring he is restricted; which construction it has been shewn he has no right to put.

If then the declaration is upon the words, surely at first blush the variances are fatal. But conceding that ' in the words of the meaning and purport following' is declaring upon the *sense*, we say, that the insertion of the word " *the*" in the declaration in lieu of " *our*" in the printed paper, has altered the sense. Publishing of the plaintiff, that he was violently opposed to all the measures of *our* national government, would be readily understood to mean a violent opposition in the plaintiff to the measures of the government of the *United States;* but not so, publishing of the plaintiff that he was violently opposed to all the measures of *the* national government. Here the particle " *the*," though definite, must refer for its meaning to some former member of the sentence, if any such exists. In a former member of this sentence, the *French* are spoken of, and an application of the expression " *the national government*" to the national government of *France*, would be natural.

These variances being thus proved to be fatal, it is now to be considered, are they amendable?

The errors of parties in common actions are to be remedied, but not here. The law never favours actions of this nature. We anticipate that principal reliance will be had upon our statute of jeofails; but the imperfections and defects mentioned therein relate to the forms of pleading, not to the substance. But allowing the statute its greatest latitude, if you plead a bad plea you cannot amend by substituting another in its stead. There is an action of conspiracy, and

another in the nature of a writ of conspiracy. These actions are substantially different. Should plaintiff declare in one, no one would contend that the Court would allow a party to amend by substituting the other. The statute applies to any defect of form, want of form, or imperfection in form. All these shall be overlooked, except in cases of special demurrer. But here is no defect of form, want of form, or imperfection in form. The declaration was good in itself, it remains good, but the evidence adduced will not support it. This is not therefore a want of *form* in the declaration, but want of *power*, therefore not amendable by the Court. If authority to amend cannot be derived from our statute of jeofails, and any other authority of this nature exists, we shall wait patiently whilst the counsel for the plaintiff produce it.

*Israel Smith*, for the plaintiff. We consider that the declaration, as it now stands, counts upon the libel in substance. ' In the words of the meaning and purport following, to wit,' must intend, not the precise words, but words in sense and substance, words of the meaning; that is, words of the purport of those set forth in the libel stated in the declaration. We shall not dwell on this point. Certainly it is unworthy of elaborate investigation, especially as our client has another point in the case reserved to rest upon, from which we cannot be shaken. Let the present declaration be as it may, a recurrence to our statute of jeofails would place the subject beyond all controversy. If there be a defect in the mode, the Court have power, nay, are compelled by the statute,

to rectify such defect, upon such conditions as they may by their rules prescribe. The statute declares, " that no summons, writ, declaration, return, process, judgment, or other proceeding in civil causes, in any of the Courts in this State, shall be abated, arrested, quashed or reversed, for any defect or want of form ; but the said Courts respectively shall proceed and give judgment according to the right of the case and matters in law, as shall appear unto them without regarding any imperfections, defects, or want of form, in such writ, declaration, or other pleadings, return, process, judgment, or course of proceedings whatsoever ; except those only in case of demurrer, which the party demurring shall specially set down and express, together with his demurrer as the cause thereof. And the said Courts may, by virtue of this act, from time to time amend all and every such imperfections, defects, and want of form, other than those only which the party demurring shall express as aforesaid, and may at any time admit either of the parties to amend any defect in the process or pleadings ; upon such conditions as the said courts respectively shall in their discretion by their rules prescribe."

The statute, it appears, enables the Court to amend all imperfections, defects and want of form. Not merely to supply the want of form, but to rectify imperfections and defects as well as want of form. It is manifest by these various expressions, embracing nearly the whole course of judicial process on the civil side, the Legislature meant to empower the Court to do something more than merely to rectify clerical mistakes.

Olin
v.
Chipman.

*Vermont* Stat.
vol. 2. p. 74.
s. 51.

Olin
v.
Chipman.

But it is said, that the object of the proposed amendment is to change the very nature of the action. The case is assimilated to an action for a conspiracy, and an action in the nature of a writ of conspiracy. These actions are said to substantially differ, and that the one could not be substituted for the other by any latitude of amendment. Be it so. Does the case stated apply here? Does the amendment from the precise words to the sense make a new action substantially differing from the former? Does such an amendment even operate a surprise upon the defendant? To meet the declaration, must the defendant vary his plea, evidence or defence? Amendments greater than that now contended for, and to which as strong objections have been made, have been directed in this Court. In debt upon bond, the date of the bond misrecited, the Court have permitted to amend, and the defendant has been estopped from saying, "You create a new action; this is another bond: the declaration is now good, but it wants power: the defect is not in the declaration, but in your evidence, which will not apply to it."

It is true there are two modes of declaring on libels laid down by systematical writers, but either of them may be indifferently chosen; either is a matter of mere form, and there is no sound reason to be given why one should be preferred, and in truth there are no appropriate words which conclusively attach to either; but if there were, the defendant should have taken advantage by special demurrer; for to all other imperfections, defects, &c. our statute extends.

*Burrow's Reports*, vol. 4. p. 2527. *The King* v. *Wilkes.* This case shews, upon solemn argument

and decision, the doctrine of amendment as established in the *English* Courts. That all such amendments as do not alter and make a different process, are allowed, whilst the utmost liberality is practised in the *English* Courts. We doubt not that here the Court will decide,

First. That the declaration now stands on the substance, or, if some trivial imperfection should appear, the Court will, in the words of the statute, give judgment according to the right of the case, without regarding any such imperfection, defect, or want of form. But if there are such defects in the declaration as it now stands as would be fatal, as no special demurrer has been pleaded, the Court will decide, that such imperfections, defects, or want of form, shall be amended upon such condition as they may under their rule prescribe.

Defendant, in reply. As the counsel for the plaintiff has rather attempted to evade than answer our arguments upon the first point, we shall rest it upon what has already been advanced.

Upon the second point, much reliance is had upon our statute of jeofails. An attempt is made to extend the purview of it to all defects excepting those specially set down in demurrer; and the question is put, why we did not demur in this case. The answer is ready : because the declaration on the face of it is good. and we repeat it, is a perfect declaration. But the plaintiff's misfortune is, he cannot avail himself of evidence which will comport with or support his declaration. And this illustrates the true doctrine of amendment, as established by our statute. The party

Olin
v.
Chipman.

may have leave to amend any defects, imperfections, &c. or want of form. But he shall not be permitted, under pretence of amendment, to vary, much more to repeatedly vary his declaration,* so as to comport with his own evidence, or elude the defendant's evidence or defence. Mr. *Smith* will not certainly contend, that although *some* therefore *all* amendments may be made under the statute. It is certain there are some defects not amendable. What are so, will be determined by the Court.

It is said, here is no new action created by any proposed amendment. The defendant came prepared to answer such action as the plaintiff might bring. If he made an imperfect declaration, the defendant might demur or go to trial. But if he makes a perfect declaration, defendant cannot demur, and plaintiff has no power, by any amendments, to destroy the defendant's rights.

It is said likewise, there are no appropriate words to express one mode of declaring on a libel more than another. In *Salkeld's Reports*, vol. 2. p. 660, 661, we find appropriate words : " There are two modes of declaring on a libel : one, *secundum tenorem sequitur*, or *cujus tenor sequitur;* the other, *quæ sequitur in his Anglicanis verbis sequentibus.*"

A case is cited from *Burrow's Reports, Rex* v. *Wilkes.* There *purport*, which was held nought, was altered to *tenor*, and we learn from that case, that although the libel was inserted *verbatim*, yet the *moot*,

---

* There had been an amendment of the declaration in the County Court.

that is, whether *tenor or substance*, was not specified in the introduction or caption, and one or the other was determined to be indispensable. But in that case there was no changing or amending from one mode to the other; but from no mode to one mode for *purport* was declared to be *naught*.

It is said, the *English* authorities authorise amendments to a liberal extent.

To comprehend the liberality and extent of their amendments, it will be necessary to attend to a rule invariably observed in their practice, that all amendments shall be made while the cause is *in paper*, and none when it is in parchment. It is well known that the *English* original writ contains no declaration. The plaintiff files his declaration in a proper office, previous to the term to which the writ is returnable. Defendant takes a certified copy of the declaration and pleads. In this situation the cause is said to be in paper, and at this time amendments may be made; nay, the plaintiff may supersede the whole declaration, and file a new one after due notice to the defendant, and here the great and liberal latitude to amendments in the *English* practice is given. But when the cause is put in parchment, that is, when the writ is returned with the declaration into Court, and certain practical modes have passed, the whole becomes part of the record of the Court, and no, or at least very rare instances of any amendment appear.

The present cause, after an amendment and trial at the lower Court, and an appeal by our practice, may certainly be said to be put in parchment.

23

Therefore, in every view of the subject, the variances appear to be fatal, and not amendable.

*Per Curiam.* The Court hesitate upon the first point. As to the second, they are rather inclined to consider, that the declaration is amendable. But as there is not a full bench, they defer an opinion until the next term, to which they direct the cause to be. continued.

For the final decision, *vide May* adjourned term, *Bennington* County, A. D. 1802.